NOT FOR PUBLICATION                              [Docket No. 11]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

RE COMMUNITY HOLDINGS II, INC.,

     Plaintiff,                      Civil No. 16-304 (RMB/JS)

        v.                          **OPINION**

ECULLET, INC.,

     Defendant.

---

APPEARANCES:

Joel M. Ferdinand, Esq.
FisherBroyles, LLP
1200 Abernathy Road
Building 600, Suite 1700
Atlanta, GA 30328

Mukti Naresh Patel, Esq.
FisherBroyles, LLP
100 Overlook Center
Second Floor
Princeton, NJ 08540
    *Attorneys for Plaintiff RE Community Holdings II, Inc.*

Sean Robins, Esq.
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
Cherry Tree Corporate Center
535 Route 38 East
Suite 501
Cherry Hill, NJ 08002
    *Attorney for Defendant eCullet, Inc.*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the Motion to

Vacate the Default Judgment by Defendant eCullet, Inc.

("eCullet" or the "Defendant") [Docket No. 11].  The Court has

reviewed the parties' submissions and, for the following reasons, Defendant's motion is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2016, Plaintiff RE Community Holdings II, Inc. ("RECom" or the "Plaintiff") commenced the instant litigation by filing a complaint against the Defendant (the "Complaint") [Docket No. 1].

The underlying dispute stems from an alleged breach by Defendant of a supply contract between the parties.  According to the Complaint, on May 1, 2012, the parties entered into an agreement "whereby eCullet agreed to purchase and receive from RECom a supply of any and all mixed glass materials from" certain materials recovery facilities belonging to Plaintiff. Complaint ¶ 7.  Plaintiff alleges that in early 2014, Defendant stopped accepting materials from Plaintiff's facilities and indicated that it intended to sell its business.  Id. ¶ 13.  As a result, the parties amended the contract to permit Defendant to find a buyer for its business on the condition that any buyer would assume Defendant's obligations under the contract. Id. ¶¶ 14-15.  The Complaint alleges, however, that Defendant sold its business without requiring the buyer to assume the obligations to Plaintiff under the contract.  Id. ¶ 17.

According to Plaintiff, at the time of the sale, Defendant owed Plaintiff outstanding payables, which remain unpaid to date.  Id. ¶¶ 18, 20.  Plaintiff also claims that, although it has tried to mitigate its damages, it has been unable to sell its materials to a third party because of "a change in market conditions and the saturation of the market."  Id. ¶ 21. According to the Complaint, Plaintiff is entitled to damages from Defendant in the amount of $7,687,026 through the end of the term of the contract on May 1, 2017.  Id. ¶ 23.

Prior to the filing of the Complaint, Plaintiff instituted non-binding arbitration proceedings in an attempt to mediate the dispute, as required by the parties' contract.  Patel Cert. Ex. A [Docket No. 12-2].  According to a December 17, 2015 email from the mediator, Defendant represented on a conference call that it was insolvent and unable to pay its share of the mediation expenses.  Patel Cert. Ex. B [Docket No. 12-2]. Therefore, the mediation did not proceed and the Plaintiff resorted to filing this lawsuit.

The Complaint was served upon Defendant's service agent on January 21, 2016 in Sacramento, California.  Def. Br. Ex. A [Docket No. 11-5].  According to Defendant, Defendant notified its insurance carrier of the Complaint on January 26, 2016. Def. Br. Ex. B [Docket No. 11-6].  The insurer acknowledged receipt the following day.  Def. Br. Ex. C [Docket No. 11-7].

3

Pursuant to Federal Rule of Civil Procedure 12(a), Defendant was required to file an answer or other responsive pleading on or before February 11, 2016, yet it failed to do so. On February 12, 2016, Plaintiff requested that the Clerk of the Court enter a default against Defendant [Docket No. 6]. The Clerk of the Court entered the default on the docket on February 16, 2016. According to Plaintiff, Plaintiff forwarded both the request for default and the Clerk's entry of default to Defendant's general counsel by email on February 22, 2016. Patel Cert. Ex. D [Docket No. 12-2].

On February 22, 2016, Plaintiff filed a request for an order granting final judgment by default against Defendant for a sum certain pursuant to Federal Rule of Civil Procedure 55(b)(1) [Docket No. 8]. The same day, Plaintiff sent Defendant a copy of its request by certified mail and email. Patel Cert. Ex. E [Docket No. 12-2]. Two days later, Plaintiff filed a revised request [Docket No. 9], which it also sent to Defendant by certified mail and email. Patel Cert. Ex. F [Docket No. 12-2]. On that same day, the Clerk of the Court entered a final judgment by default against Defendant and in favor of Plaintiff in the total amount of $7,695,179.97, representing the principal amount of $7,687,026.00, prejudgment interest of $7,594.97, and costs of $559.00 [Docket No. 10].

On March 3, 2016, counsel for Defendant's insurer notified Defendant that the insurer would defend it in the instant action, but that Defendant would be required to pay $100,000 out of pocket before the insurer became obligated to pay any defense costs. Def. Br. Ex. D [Docket No. 11-8]. Defendant informed its insurer that, due to its financial condition, it was unable to satisfy this requirement. Def. Br. Ex. E ¶ 18 [Docket No. 11-9]. On April 7, 2016, however, the insurer agreed to defend Defendant "from the first dollar." Id. ¶ 19. Then, on May 13, 2016, Defendant filed its Motion to Vacate the Default Judgment [Docket No. 11].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) permits parties to petition federal courts for relief from final judgments. When deciding whether to set aside a default judgment in particular, district courts are guided by a three-part test and must consider (1) whether the plaintiff will be prejudiced if the default judgment is set aside; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. Doe v. Hesketh, 828 F.3d 159, 175 (3d Cir. 2016); Nationwide Mut. Ins. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 522 (3d Cir. 2006) (citing Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 981

(3d Cir. 1988)); Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

While district courts are generally urged to make explicit findings concerning these three factors in considering a motion to vacate a default judgment, Emcasco, 834 F.2d at 73, the second factor, namely whether the defendant has a meritorious defense, is a "threshold question," since "there would be no point in setting aside the default judgment and [conducting] a . . . hearing [on the merits] if [the moving party] could not demonstrate the possibility of his winning." U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984); accord Starlight Ballroom, 175 F. App'x at 522.

Decisions to set aside default judgments are left to the discretion of the district court, but doubtful cases should be resolved in favor of the party moving to set aside the default judgment so that cases, when possible, may be decided on their merits. $55,518.05, 728 F.2d at 194-95 (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951)). Generally, the Third Circuit is "reluctan[t] to permit the final disposition of substantial controversies by default." Hutton v. Fisher, 359 F.2d 913, 916 (3d Cir. 1966) (quoting Tozer, 189 F.2d at 245 ("Matters involving large sums should not be determined by default judgments if it can be reasonably avoided.")).

## III. ANALYSIS

### A. Meritorious Defense

The Court first considers the "threshold question" of whether Defendant has a meritorious defense, which would, if established at trial, constitute a complete defense to the action. $55,518.05, 728 F.2d at 195.

"The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" $55,518.05, 728 F.2d at 195 (quoting Tozer, 189 F.2d at 244). A defendant, however, "does not have the right to have a default judgment set aside automatically upon alleging a defense." Harad, 839 F.2d at 982. Rather, the "standard is more stringent; it requires a defendant to 'set forth with some specificity the ground for his defense.'" Starlight Ballroom, 175 F. App'x at 522 (quoting Harad, 839 F.2d at 982). Courts then evaluate the substance of the defense to ascertain whether it is meritorious. Id. (citing Harad, 839 F.2d at 982).

Defendant's Proposed Answer [Docket No. 11-10] sets forth twenty-nine affirmative defenses. Defendant appears to concede that these affirmative defenses are largely generic, but urges the Court to instead focus on four of these defenses which, in Defendant's view, are "specific to the contracts between the parties, and the Plaintiff's claims, which, if proven at trial,

7

would constitute complete defenses to those claims."  Def. Reply Br. at 13 [Docket No. 13].[1]

Defendant does not allege any "specific facts beyond simple denials or conclusory statements" supporting these affirmative defenses, as required to establish a meritorious defense. See $55,518.05, 728 F.2d at 195.  Instead, Defendant baldly

---

[1] The four affirmative defenses read as follows:

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Defendant, eCullet, fulfilled its obligations under the contract with Plaintiff, ReCom, including its obligations under the written modifications of the contract, of July 14, 2014.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiff, ReCom, breached the contract with Defendant, eCullet, with respect to the quality and/or quantity of the materials being submitted by ReCom to eCullet for processing.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff, ReCom's breach of the terms of the contract with Defendant, eCullet, excuses eCullet's performance under the contract.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

The essential terms of the contract between the parties was [sic] subject to their mutual mistake as to the quantity and quality of materials to be received by Plaintiff from MRFs and then delivered by Plaintiff to Answering Defendant for processing, which mutual mistake rendered the contract impossible to perform as the parties had intended, and performance therefore excused.

Proposed Answer at p. 11.

asserts that it has fulfilled its obligations under the parties'
contract, that Plaintiff has breached the contract and,
therefore, excused Defendant's performance, and that the
essential terms of the parties' contract were subject to mutual
mistake, rendering performance impossible.  Proposed Answer at
p. 11.  Yet the Defendant does not elucidate the grounds for
these defenses with any specificity whatsoever.  The Proposed
Answer contains no "substance" from which the Court may
"ascertain whether [the defenses] [are] meritorious."  Starlight
Ballroom, 175 F. App'x at 522 (citing Harad, 839 F.2d at 982).
In light of the "stringent standard" set forth by the Third
Circuit, see Harad, 839 F.2d at 982, the Court finds that
Defendant's Proposed Answer does not set forth a meritorious
defense which, if proven at trial, would establish a complete
defense to the action.

     In any case, even if Defendant's affirmative defenses were
set forth with the requisite specificity, the defenses only
address Plaintiff's contract-based claims.  The Complaint,
however, also pleads a fraud claim (Count Five) and a fraudulent
transfer claim under N.J.S.A. § 25:2-25 (Count Six).  Yet
Defendant's Proposed Answer does not assert any defenses to
either of these claims.  It is insufficient to set forth
allegations that may provide complete defenses to only certain
claims, but not others.  See In re Subramanian, 245 F. App'x

111, 116–17 (3d Cir. 2007) (affirming bankruptcy court's denial of motion to vacate default judgment "because debtors failed to assert a meritorious defense as to <u>all</u> of the allegations in the complaint") (emphasis added); <u>see also</u> <u>Amato v. Mastria</u>, 2007 WL 837097, at *3 (D.N.J. Mar. 16, 2007) (citing <u>$55,518.05</u>, 728 F.2d at 195) ("[Defendant] must demonstrate the existence of a meritorious defense to the entire case before the Court should even consider whether to vacate the default."). Accordingly, Defendant has failed to establish that it has a meritorious defense because it has not set forth any defenses that, if proven at trial, would constitute a <u>complete</u> defense to <u>the action</u>. See <u>$55,518.05</u>, 728 F.2d at 195. This factor decidedly supports denial of Defendant's Motion to Vacate the Default Judgment.

Because the matter of whether Defendant has a meritorious defense is a "threshold question" in ruling on a motion to vacate a default judgment and the Court has found that Defendant has not established that it has a meritorious defense, the Court need not reach the remaining two factors. <u>Id.</u> Nonetheless, as the Third Circuit has urged district courts to make explicit findings concerning these factors when considering a motion to vacate a default judgment, the Court will do so. <u>Emcasco</u>, 834 F.2d at 73.

### B. Prejudice to Plaintiff

The Court next addresses whether Plaintiff will be prejudiced if this Court vacates the default judgment against Defendant.  "Prejudice is established . . . when a plaintiff's 'ability to pursue the claim has been hindered . . . [by, for example,] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'" Starlight Ballroom, 175 F. App'x at 524 (quoting Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982)).  "Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice" necessary to warrant the denial of a motion to vacate a default judgment.  Feliciano, 691 F.2d at 656-57.

Plaintiff contends that it will be prejudiced if the Court grants the pending motion because it "will be unable to obtain relief if the default judgment is vacated."  Pl. Opp. Br. at 6 [Docket No. 12].  It bases this argument on Defendant's alleged representations during mediation that it was insolvent and intended to file for bankruptcy.  Patel Cert. ¶¶ 7-9 [Docket No. 12-1]; Patel Cert. Ex. B [Docket No. 12-2].  As a result of these alleged representations, Plaintiff is concerned that "[i]f the [default] judgment is vacated and eCullet is able to declare bankruptcy before RECom can litigate its claims to judgment again, then RECom will be unable to pursue its claims at all and

11

potentially have no remedy." Pl. Opp. Br. at 7. This is the only prejudice that Plaintiff claims it will suffer. Defendant neither admits nor denies stating that it intends to file for bankruptcy protection. Additionally, Defendant does not make any representations as to its current financial condition or its present intention with regards to bankruptcy. It merely states that it has not yet filed for bankruptcy. Def. Reply Br. at 2.

At this stage, the Court is unable to determine whether Defendant is likely to file for bankruptcy and, accordingly, whether Plaintiff's claims of prejudice will materialize. All the Court has before it are Plaintiff's statements that, in late 2015, Defendant claimed that it was insolvent and intended to seek bankruptcy protection. It is unable to assess whether those statements were true at the time or, more importantly, whether they are true now.

The Court nonetheless notes that if Plaintiff's concern is well-founded and Defendant does intend to file bankruptcy in the near future, this would prejudice Plaintiff by hindering its ability to pursue its claims in light of the automatic stay. See, e.g., Provident Bank v. Bittleman, 2012 WL 1414249, at *2 (S.D. Fla. Apr. 20, 2012) ("granting [defendant's] request for relief [to vacate the default judgment] may further prejudice [plaintiff] as [defendant] is considering filing for bankruptcy"); Canales v. A.H.R.E., Inc., 254 F.R.D. 1, 10

(D.D.C. 2008) ("the fact that the [defendant] is now 'virtually insolvent' counsels against setting aside the default judgment . . . given that Plaintiffs' likelihood of a successful recovery is diminishing rapidly with the passage of time.") (internal quotations and alterations omitted); Bell Sav. Bank PaSA v. Del-Val Fin. Corp., 1990 WL 181496, at *2 (E.D. Pa. Nov. 20, 1990) ("Under these circumstances, [plaintiff] reasonably fears that [defendant] may file for bankruptcy. If [defendant] does in fact file for bankruptcy, [plaintiff] would be significantly prejudiced if the judgment were opened . . . .").

Defendant responds to Plaintiff's claim of prejudice by stating that, if it filed for bankruptcy, any judgment obtained against it by Plaintiff, whether by default or not, "would be subject to its non-secured creditor status, and any ability to recover subordinated to eCullet's secured creditors." Def. Reply Br. at 2. It appears, however, that Plaintiff would be in a better position in any future bankruptcy proceedings as the holder of a valid federal court judgment against Defendant, as opposed to merely as a party in an unresolved litigation.

In any case, upon the record before it, the Court cannot make any determinations as to Defendant's present financial condition or the likelihood that it will soon file bankruptcy. Accordingly, while Plaintiff "may justifiably be concerned about the potential disruptions [Defendant's possible] bankruptcy may

13

cause, at this point that threat is speculative.  Such speculation is not the type of concrete prejudice that weighs against setting aside the default." Stilley v. Elliott Auto Supply Co., 2015 WL 4715554, at *4 (D. Minn. Aug. 7, 2015).

### C. Culpability of Defendant

Finally, the Court considers whether the entry of the default judgment was the result of Defendant's culpable conduct. The Third Circuit has held that "the standard for 'culpable conduct' in this Circuit is the 'willfulness' or 'bad faith' of a non-responding defendant." Hritz v. Woma Corp., 732 F.2d 1178, 1182 (3d Cir. 1984).  The Hritz court cautioned, however, that:

> [T]he words 'willfulness' and 'bad faith' are not talismanic incantations which alone resolve the issue on appeal.  These are simply terms to guide the district court by expressing this Court's preference for avoiding default judgments where the circumstances do not justify such a result.  The entry of default judgment may be as proper in a case where these terms never appear as it is improper where the terms are invoked in support of arbitrary procedural adjudication.

Id. at 1182-83.

Accordingly, "as a threshold matter to establish culpability, more than mere negligence [must] be demonstrated." Id. at 1183; accord Starlight Ballroom, 175 F. App'x at 523 (quoting Hritz, 732 F.2d at 1183).  "[A]cts intentionally designed to avoid compliance with court notices," as well as

"[r]eckless disregard for repeated communications from plaintiffs and the court," may demonstrate culpability. <u>Hritz</u>, 732 F.2d at 1183; <u>see also</u> <u>Starlight Ballroom</u>, 175 F. App'x at 523.

Defendant argues that it, at most, acted negligently and that its neglect is "clearly excusable under the circumstances." Def. Br. at 8 [Docket No. 11].  In fact, Defendant contends that it acted "appropriately" and "reasonably" by forwarding the complaint to its insurer within days of being served and then waiting for its insurer to act.  <u>Id.</u>  Plaintiff counters that, other than send the complaint to its insurer, Defendant "did nothing but sit on its hands," even though Defendant knew it was being sued.  Pl. Opp. Br. at 9.  This, Plaintiff contends, demonstrates that Defendant willfully ignored this action and disregarded its obligation to defend itself.

The Court agrees that Defendant acted willfully in ignoring this action until May 13, 2016, almost four months after it had been served with the summons and complaint.  In essence, Defendant argues that, by promptly forwarding the complaint to its insurer, it had washed its hands of the matter and had no further obligations with regard to the action.  The Court disagrees.  Although Defendant promptly forwarded the Complaint to its insurer, this alone does not excuse Defendant from defending itself in accordance with the Federal Rules of Civil

15

Procedure or suffering the consequences of its failure to do so. At the very least, Defendant could have notified Plaintiff and the Court that it intended to defend itself but that it was awaiting confirmation of representation from its insurer.  Yet, it instead chose to do nothing.

Knowing full well that a multimillion dollar default judgment had been entered against it, Defendant continued to do nothing.  It apparently did not reach out to its insurer in an effort to expedite the process.  Even once it heard back from its insurer on March 3, 2016 and after its insurer agreed on April 7, 2016 to represent Defendant, Defendant continued to ignore this action and the default judgment against it.  It was not for another month that Defendant, presumably through its insurer, finally sought to vacate the default judgment.

Where, as here, a defendant repeatedly and completely disregards communications regarding a lawsuit against it and chooses not defend itself until months after its deadline to file a responsive pleading has passed, its conduct is willful and culpable.  See, e.g., Braverman Kaskey, P.C. v. Toidze, 599 F. App'x 448, 453 (3d Cir. 2015); Starlight Ballroom, 175 F. App'x at 523; Smith v. Kroesen, 2016 WL 5402211, at *4 (D.N.J. Sept. 27, 2016).

For example, in Starlight Ballroom, the Third Circuit upheld the district court's denial of a motion to vacate a

16

default judgment, in part, because the default was the result of
the defendant's culpable conduct.  175 F. App'x at 523.  The
Third Circuit observed that the defendant

> [did] not dispute that it received all key
> correspondence in this case.  It did not reply to
> [plaintiff's] May 2004 letter.  It also did not, as
> the District Court found, answer, appear, or plead in
> response to the July 20, 2004 summons and complaint;
> the August 11, 2004 motion for default; the August 12,
> 2004 entry of default; or the September 16, 2004
> motion for default judgment.  At no time during this
> entire proceeding did [the defendant] contact either
> [the District] Court or [the plaintiff].  Instead,
> [defendant] simply gave all the paperwork to its
> insurance broker.

Id. (internal quotations and citations omitted).  The Third
Circuit found that "[t]his is the kind of reckless disregard for
repeated communications regarding a suit that establishes a
defendant's culpability."  Id.

Likewise, in Braverman Kaskey, the Third Circuit affirmed
the district court's determination that defendant's default was
intentional.  599 F. App'x at 453.  The Third Circuit explained
that the district court properly found that defendant's "conduct
in ignoring this action [was] culpable and not merely negligent"
where the plaintiff had emailed defendant "in an attempt to
notify her of the pending litigation."  Id.; see also Smith,
2016 WL 5402211, at *4 ("ignoring legal documents and service of
a complaint simply because they were new and unfamiliar cannot

absolve a properly served defendant from the ramifications of burying his head in the sand.").

In any case, Defendant's "responsibility . . . does not terminate with its purchase of an insurance contract." See Hritz, 732 F.2d at 1183-84.  It should have had in place "an appropriate internal procedure for processing claims . . . . The absence of such a procedure, in effect the disregard for the possibility of injuries [caused by it], is also a proper consideration in deciding whether a defendant's conduct may be deemed culpable." Id. at 1184 (citing Davis v. Safeway Stores, Inc., 532 F.2d 489, 490 (5th Cir. 1976)) (affirming district court's refusal to vacate a default judgment because "[t]he lack of communication between defendant and its insurance company for three weeks after the latter had received a copy of the complaint suggests an absence of minimal internal procedural safeguards."); see also Williams v. Lakin, 2007 WL 2114649, at *3 (N.D. Okla. July 20, 2007) ("Courts have generally attributed the actions of the insurer to the insured in the context of a default judgment . . . .  Most courts have not set aside default judgment when an insurer's actions caused default judgment to be entered against the insured.").  "Ultimately, as the actual entity being sued, [Defendant eCullet] must take responsibility for assuring itself that what must be done has, in fact, been done." Hritz v. Woma Corp., 92 F.R.D. 364, 367

(W.D. Pa. 1981) (noting that "[i]t should be apparent to a corporation like [defendant] that simply filtering the complaint down to the insurance carrier who will ultimately be responsible for the preparation of the defense is likely to take longer than 20 days.  It must take steps to expedite the process when confronted with a suit."), remanded on other grounds 732 F.2d 1178 (3d Cir. 1984).

Accordingly, the Court finds that the default judgment was not due to Defendant's excusable neglect, but rather it was the result of its own willful disregard of its responsibilities in this action.  This third factor weighs against setting aside the default judgment.

## IV.  CONCLUSION

In sum, the Court has assessed the relevant factors and finds that the default judgment should not be vacated. Accordingly, for the foregoing reasons, Defendant's Motion to Vacate the Default Judgment [Docket No. 11] is denied.  The Order granting final judgment by default in favor of Plaintiff and against Defendant [Docket No. 10] shall remain in effect. An appropriate Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: October 7, 2016